UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NOAM MARTIN, on behalf of himself and all other persons similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>DHL EXPRESS (USA), INC.,<br><br>*Defendants*. | Civil Action No. 3:21-cv-13363<br><br>**MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

This case is before the Court on Defendant's Motion to Dismiss Plaintiff's First Amended Putative Class Action Complaint. (ECF No. 9). The Court heard oral argument on October 27, 2021. For the reasons that follow, Defendant's motion is granted.[1] The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332(d).

**I.**

**A. Facts**

According to the First Amended Complaint (FAC), Plaintiff Noam Martin purchased goods from Brickshop Holland, B.V., an overseas merchant. (FAC, Ex. A, ECF No. 7). Brickshop Holland contracted with Defendant DHL Express (USA), Inc. ("DHLE") to ship the goods to Martin, who resided in New Jersey. (*See* FAC at ¶¶25-28). According to the FAC, merchants (such as Brickshop) are responsible for the fees and charges owed to DHLE. (*Id.* at ¶28). However, after the goods enter into the United States, the United States imposes a duty

---

[1] Prior to Plaintiff filing the amended complaint, Defendant moved to dismiss Plaintiff's original putative class action complaint. (ECF No. 6). That motion is denied as moot. *Gremo v. Bayer Corp.*, 469 F. Supp. 3d 240, 247 n.2 (D.N.J. 2020).

and DHLE charges the recipient of the goods (Martin) for said duty.² (*Id.* at ¶29). DHLE alerts the recipient via written notice that "[i]f the duty is not paid within 5 days, the parcel will be returned to the shipper." (*Id.*). Martin received such notice from DHLE. (*Id.* at ¶22). Allegedly, DHLE adds on "an undisclosed uniform $17 service charge" as part of the duty charge. (*Id.* at ¶¶38-39). According to the FAC, the $17 charge is "an additional, undisclosed, and totally unauthorized source of profit." (*Id.* at ¶42). Once the recipient pays the cost of the duty – including the undisclosed service charge – DHLE sends a second email confirming the payment and delivers the goods. (*Id.* at ¶34).

### B. Procedural History

DHLE removed the case to this Court under the Class Action Fairness Act (CAFA), 28 U.S.C §1332(d). (Notice of Removal, ECF No. 1). Thereafter, DHLE moved to dismiss Martin's original complaint. (Motion to Dismiss Plaintiff's Original Complaint, ECF No. 6). In that motion, DHLE argued the statutory and common law claims were preempted by the Airline Deregulation Act, 49 U.S.C. § 41713(b)(4)(A) (ADA), and the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501(c)(1) (FAAAA). Those federal statutes preempt state laws "related to a price, route, or service" of any air or motor carrier like DHLE. (*Id.* at 5-14).

Recognizing the deficiency in the Original Complaint, Martin filed the FAC immediately after the motion to dismiss was filed. (ECF No. 7). The FAC dropped all of the statutory and common law claims presented in the original complaint, and instead alleged an exception to the preemption doctrine – a breach of contract claim against DHLE. (*Compare* Original Complaint at ¶¶58-103 *with* First Amended Complaint at ¶¶59-62). Martin's legal theory is as follows:

---

² A duty is "[a] tax levied on an imported or exported commodity; esp[ecially] the federal tax levied on goods shipped into the United States." *Black's Law Dictionary* 581 (9th ed. 2009).

> 7. The legal theory underlying this First Amended Complaint is that [the] two written form email communications sent by DHL[E], and the statement on the DHL[E] website to which class members are directed, constitute an offer to contract to each class member under which <u>DHL[E] promises to deliver the recipient's package</u> if the recipient reimburses DHL[E] for the import duties DHL[E] paid for said package.
>
> 8. That offer is then accepted by the subsequent conduct/performance of the recipient and a binding contract is formed.
>
> 9. The gravamen of this breach of contract action is that <u>DHL[E] commits a class-wide breach of said contract by charging each class member/recipient more than what is required</u> in order to reimburse DHL[E] for any government duties and/or taxes paid by DHL[E].
>
>    . . . .
>
> 30. Nothing in [the] DHL[E] email communication states or discloses that DHL[E] is seeking any monies whatsoever from the recipient other than the amounts which **"DHL Express has paid the duty for your parcel."**
>
> 31. The purchaser/recipient is not advised of any other charges beyond reimbursement to DHL[E] for such **"import duties."**
>
>    . . . .
>
> 38. Specifically, in addition to any government import duties, taxes, or governmental charges paid by DHL[E] – for which class members have agreed to reimburse DHL[E] – DHL[E] also imposes an undisclosed uniform $17 service charge on class members; a $17 charge which goes directly to DHL[E] and which is not reimbursement for any cost whatsoever but rather is additional profit for DHL[E].

(FAC at ¶¶7-9, 30-31, 38).  DHLE re-filed its motion to dismiss, contending the breach of contract exception does not apply.  (ECF No. 9).

## II.

### A. Legal Standard

"In deciding a Rule 12(b)(6) motion, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff." *United States v. Loving Care Agency, Inc.*, 226 F. Supp. 3d 357, 362-63 (D.N.J. 2016). The plaintiff's factual allegations must give rise to a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court should disregard legal conclusions and "recitals of the elements of a cause of action, supported by mere conclusory statements." *Santiago v. Warminster Township*, 629 F.3d 121, 128 (3d. Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

The Third Circuit set forth a three-part test for determining whether a complaint should be dismissed for failure to state a claim:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Id.* at 130 (alteration in original) (quoting *Iqbal*, 556 U.S. at 675, 679).

### B. Preemption under the ADA and FAAAA

By way of background, prior to enactment of the ADA, the Federal Aviation Act of 1958 contained a savings provision. The savings provision preserved pre-existing state statutory and common law remedies. *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 279-80 (2014). This caused

varying and conflicting government oversight pursuant to a "baffling patchwork of rules." *Id.* at 279-80, 88.  To cure this predicament, Congress enacted the ADA "includ[ing] a preemption provision in order to 'ensure that the States would not undo federal deregulation with regulation of their own.'"  *Id.* at 280 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U. S. 374, 378 (1992)).  The preemption section of the ADA reads:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier or carrier affiliated with a direct air carrier through common controlling ownership when such carrier is transporting property by aircraft or by motor vehicle (whether or not such property has had or will have a prior or subsequent air movement).

49 U.S.C. § 41713(b)(4)(A).[3]

The Supreme Court has reviewed the preemption provision on several occasions.  *Morales*, 504 U. S. at 374; *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995); *Ginsberg*, 572 U.S. at 273.  Within those cases, the Court found the preemption provision expresses a "broad pre-emptive purpose," as the preemption provision bars any action that has a "connection with or reference to airlines routes and services."  *Morales*, 504 U.S. at 383.  Subsequent to *Morales*, the Court held that the preemption provision barred any statutory consumer fraud cause of action, but it did not bar a breach of contract claim.  The Court distinguished between the two, in that

---

[3] Congress later deregulated trucking, and in 1994, applied an identically worded preemption provision in the FAAAA to motor carriers.  *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 368 (2008); *see also* 49 U.S.C. § 14501(c)(1).  The FAAAA preemption provision provides:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by [49 USCS § 41713(b)(4)] or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).  Both preemption provisions are interpreted identically.  *Rowe*, 522 U.S. at 370.

the terms of a contract are "privately ordered obligations and thus do not amount to a State's enactment or enforcement of any law, rule, regulation, standard, or other provision having the force and effect of law . . . ." *Id.* at 228-29 (internal quotation marks omitted).

Finally, the Court reviewed whether the implied covenant of good faith and fair dealing was barred by the preemption clause. *Ginsberg*, 572 U.S. at 281. The implied covenant is not a privately negotiated obligation of the parties, but is a common law obligation adopted by the Courts that is read into each contract. As such, the ADA's preemption provision applies to both state legislation and regulations but also to a "common-law rule like the implied covenant of good faith and fair dealing." *Id.* at 281. The reason is that an implied covenant is more similar to a provision of common law than to a term negotiated by the parties. *Id.* at 281-82.

### C. Plaintiff's Claim

As set forth above, Martin presents his claim as a breach of contract claim negotiated by the parties. (*Id.* at ¶¶59-62). According to Plaintiff, the sole claim in the FAC is that the emails Martin received from DHLE created a contractual agreement between the parties to deliver the goods he ordered from Brickshop in exchange for his reimbursing DHLE for the duty on the goods, and DHLE allegedly breached that contract by charging an additional "service fee" as part of the duty. (*Id.* at ¶¶29-39).

On the other hand, DHLE contends Martin's alleged cause of action is preempted because it is based entirely on DHLE's rates and services (the duty and the undisclosed service fee). (Motion to Dismiss Amended Complaint at 13-14). Further, DHLE contends that the alleged breach of contract claim is actually a thinly veiled fraud or misrepresentation claim, and as such is preempted by the ADA and the FAAAA. Moreover, Defendant contends that it is not

a breach of contract claim, because Martin does not allege DHLE failed to perform its obligation under the alleged contract. (Motion to Dismiss First Amended Complaint at 14-17).

So, in light of the Supreme Court holdings and the arguments of the parties, the focus of the motion is the nature of the cause of action. That is, whether it entails a breach of contract or is one of fraud. "[T]he interpretation of private contracts is ordinarily a question of state law . . . ." *Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989); *see also In re Cmty. Bank N. Va. Mortg. Lending Pracs. Litig.*, 911 F.3d 666, 670 n.1 (3d Cir. 2018). Under New Jersey law, a contract is formed through "offer, acceptance, consideration, and performance by both parties." *Shelton v. Restaurant.com, Inc.*, 70 A.3d 544, 556 (N.J. 2013). There are four elements to a claim of breach of contract:

> first, that the parties entered into a contract containing certain terms; second, that [the] plaintiff did what the contract required [the plaintiff] to do; third, that [the] defendant did not do what the contract required [the defendant] to do, defined as a breach of the contract; and fourth, that [the] defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff.

*Woytas v. Greenwood Tree Experts, Inc.*, 206 A.3d 386, 392 (N.J. 2019) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)); *see also Tracey v. Recovco Mortg. Mgmt. LLC*, 451 F. Supp. 3d 337, 342 (D.N.J. 2020). A sensible reading of the FAC does not show a breach of contract, but that DHLE misrepresented the amount of the duty by including an undisclosed service charge. Moreover, as DHLE argued, Martin alleges he had a contract with DHLE whereby he agreed to pay the duty fee in exchange for DHLE agreeing to deliver his package. (FAC at ¶7). As such, there is no breach. To argue, as Martin does, that the breach was charging the hidden service fee is not a plausible, logical conclusion. *Woytas*, 206 A.3d at 392.

Martin's claim is more akin to a fraud or unjust enrichment claim which emanate from the common law. The elements of common law fraud are that the defendant:

> (1) made a false representation of a material fact, (2) knew or should have known that the representation was false, and (3) intended to induce the plaintiff to rely on the representation. In addition, the plaintiff: (4) must have actually relied on the representation in a manner justifiable under the circumstances and (5) suffered damage as a result of his reliance.

*Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 468 (D.N.J. 2009); *see also Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 261 (N.J. 2005). Considering the elements of common law fraud, Martin essentially alleges: DHLE made a false representation about the nature of the duty for which it demanded payment; Martin relied on that false representation in paying the fee; and Martin suffered damages, specifically the $17 service charge. (FAC at ¶¶7-9, 30-31, 38). Although Martin does not specifically allege the scienter elements, it is easy to infer same in light of imposing a $17.00 fee. *See Agostino*, 256 F.R.D. at 468.

Similarly, the elements of common law unjust enrichment is a more appropriate cause of action. They are: "(1) the defendant[] received a benefit and (2) the retention of that benefit without payment would be unjust." *Maersk Line v. TJM Int'l L.L.C.*, 427 F. Supp. 3d 528, 535 (D.N.J. 2019); *see also QVC, Inc. v. OurHouseWorks, LLC*, 649 Fed. Appx. 223, 228 (3d Cir. 2016); *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 641 A.2d 519, 526 (N.J. 1994). Here, Martin essentially alleges DHLE received $17 after misrepresenting the nature of its "duty" charge and DHLE's retention of that benefit would unjustly deprive Martin of $17 he should not have had to pay. (FAC at ¶¶30-31, 38).

In sum, Martin's claim boils down to DHLE's alleged misrepresentation of the nature of its "duty" charge which one would deem to be a tax imposed by the United States; and instead of a tax and service fee. The service fee charged as part of the duty is plainly "related to a price, route, or service of" DHLE. 49 U.S.C. § 41713(b)(4)(A); 49 U.S.C. § 14501(c)(1). Likewise, state common law claims of fraud and unjust enrichment are barred by the "broad pre-emptive

purpose" of the ADA and FAAAA, and with Congress' intent to deregulate the airline and trucking industries. *Ginsberg*, 572 U.S. at 281-84. Despite that draconian preemptive provision, the Plaintiff has some relief since he may bring an action before the U.S. Department of Transportation.[4]

For the foregoing reasons, Martin's complaint is dismissed. To allow an amendment to the Complaint would be futile.

## ORDER

**THIS MATTER** having come before the Court on Defendant's Motion to Dismiss Plaintiff's FAC (ECF No. 9); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons,

**IT IS** on this 20th day of January, 2022,

**ORDERED** that Defendant's motion to dismiss is granted.

The Clerk is directed to close the file.

s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

---

[4] Martin is not without recourse for DHLE's alleged wrongdoing. "Congress has given the Department of Transportation (DOT) the general authority to prohibit and punish unfair and deceptive practices in air transportation and in the sale of air transportation, 49 U. S. C. §41712(a) . . . ." *Ginsberg*, 572 U.S. at 288-89. While Martin cannot seek damages, he "can seek civil penalties of up to $1,000 per violation, 49 U.S.C. §§ 1155, 46301 . . . ." *Martin Theatrical v. Federal Express Corp.*, 89 F.3d 1244, 1251 (6th Cir. 1996).